UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **ROBERT TAYLOR (R-51280),** | ) |
| | ) |
| Plaintiff, | ) Case No. 10 C 3681 |
| | ) |
| v. | ) Judge Charles R. Norgle |
| | ) |
| **LIEUTENANT STONE, et al.,** | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Robert Taylor, filed suit, *pro se*, against Defendants, Everett Stone, Michael Norton, and Anthony Robinson, alleging he was subjected to cruel and unusual punishment because of the conditions of his cell at Stateville Correctional Center. Presently before the Court is the Defendants' motion for summary judgment on the limited issue of whether Plaintiff exhausted his administrative remedies. For the reasons stated in this order, Defendants' motion for summary judgment is granted.

## LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Vision Church v. Village of Long Grove*, 468 F.3d 975, 988 (7th Cir. 2006). In determining whether factual issues exist, the court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Weber v. Universities Research Assoc., Inc.*, 621 F.3d 589, 592 (7th Cir. 2010). The court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the

matter. The only question is whether there is a genuine issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009), *citing Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986).

However, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Sarver v. Experian Information Solutions*, 390 F.3d 969, 970 (7th Cir. 2004) (citations omitted). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010), *quoting Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640-41 (7th Cir. 2008).

When Defendants filed their motion for summary judgment, they included a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" as required by *Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992); *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982) and Local Rule 56.2 (N.D. Ill.). This notice clearly sets out the requirements of this Court's Local Rule 56.1. In particular, the notice explains that Plaintiff's response must comply with Federal Rule of Civil Procedure 56(e) and Local Rule 56.1 (N.D. Ill.).

Local Rule 56.1(b) requires a party opposing a motion for summary judgment to file:

> (3) a concise response to the movant's statement that shall contain:
>
> (A) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and

2

> (B) a statement, consisting of short numbered paragraphs, of any additional facts that require denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

L.R. 56.1(b). The district court may require strict compliance with Local Rule 56.1. *See Ammons v. Aramark Uniform Serv., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004); *Bordelon v. Chicago School Reform Board of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000) (strict compliance with the local rules governing summary judgment is upheld given the importance of local rules that structure the summary judgment process).

Although *pro se* plaintiffs are entitled to lenient standards, compliance with procedural rules is required. *Members v. Paige*, 140 F.3d 699, 702 (7th Cir. 1998) ("[R]ules apply to uncounseled litigants and must be enforced"); *Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir.1994). Despite being given this notice, Plaintiff's response to Defendants' motion is deficient. Plaintiff filed a response to Defendants' motion entitled: "Motion plaintiff objects and opposes defendants motion for summary judgment." Plaintiff's response does not address Defendants' proposed statements of fact. Instead, his response addresses Defendants' arguments without citation to any supporting materials. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs"). Plaintiff's response to Defendants' proposed statements of fact are not in compliance with Rule 56.1(b)(3). Accordingly, Defendants' proposed statements of fact are deemed admitted. *See Chelios v. Heavener*, 520 F.3d 678, 687 (7th Cir. 2008); L.R. 56.1(b)(3)(B). However, because Plaintiff is proceeding *pro se*, the Court will consider the factual assertions he makes in his response, but only to the extent that he could properly testify about the matters asserted at trial – that is, only with respect to those facts within Plaintiff's personal knowledge. See FED. R. EVID. 602.

3

## UNDISPUTED FACTS

Plaintiff is an inmate currently incarcerated at Menard Correctional Center. (Defs.' 56.1(a)(3) Statement 56.1(a)(3) ¶ 1.) Plaintiff filed this action pursuant to 42 U.S.C. § 1983, alleging that he was subjected to cruel and unusual punishment because of the conditions of his cell while housed at Stateville Correctional Center. (*Id.*). Defendant Everett Stone was a Correctional Officer at Stateville during the relevant time period. (*Id.*, ¶ 2.) Plaintiff alleges that Stone left him unsupervised and handcuffed in a holding pen for several hours and then placed him a cell infested with roaches, with a urine-soaked, blood-stained mattress. (*Id.*). Defendant Anthony Robinson was a Duty Officer and Shift Commander at Stateville during the relevant time frame. (*Id.*, ¶ 3.) Plaintiff alleges that Robinson refused to move him to another cell, refused to remove the mattress from his cell, and laughed at him. (*Id.*) Defendant Michael Norton was a Duty Sergeant at Stateville during the relevant time frame. (*Id.*, ¶ 3.) Plaintiff alleges that Norton refused to provide him with a clean mattress, refused to call maintenance, and refused to move him to another cell. (*Id.*)

The Illinois Department of Regulations has a formal grievance procedure for inmates. (Defs.' 56.1(a)(3) Statement ¶ 7.) Generally, an inmate must first attempt to resolve grievances through his counselor. (*Id.*, ¶ 8.) If the grieved issue remains unresolved after this informal effort, or involves a disciplinary proceeding, the inmate may submit a written grievance on a grievance form to the facility Grievance Officer designated by the Chief Administrative Officer (CAO). (*Id.*). The Grievance Officer may personally interview the inmate and/or witnesses as deemed appropriate and obtain relevant documents to determine the merits of the inmate's grievance. (*Id.*) Upon

completion of any investigation, the Grievance Officer's conclusions and, if appropriate, recommended relief, is forwarded to the CAO. (*Id.*) The CAO reviews the grievance and response and the CAO's decision is then submitted back to the grieving inmate. (*Id.*). If the inmate disagrees with the CAO's decision, he may appeal in writing to the Director of the Department by submitting the Grievance Officer's report and CAO's decision. (*Id.*) The Administrative Review Board (ARB), as the Director's designee, reviews the appeal and first determines whether the inmate's grievance can be handled without the necessity of a hearing. (*Id.*) If no hearing s required, the inmate is so informed. (*Id.*) Other matters are scheduled for an ARB hearing. (*Id.*) The ARB submits a written report of its findings and recommendations to the Director, or designee, who reviews the report and makes a final determination on the grievance. (*Id.*) A copy of the ARB's report and the Director's final decision are sent to the inmate who filed the grievance. (*Id.*) The originals of these documents are maintained in the ARB files. (*Id.*) At this point, the issue is considered to be exhausted. (*Id.*)

An inmate may also request an emergency grievance by forwarding the grievance directly to the CAO rather than a counselor or Grievance Officer. (Defs.' 56.1(a)(3) Statement ¶ 9.) If the CAO determines that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the inmate, the grievance may be handled on an emergency basis. (*Id.*) An inmate may appeal the CAO's decision in such a situation to the ARB. (*Id.*) The appeal is handled in accordance with the procedures set forth above. (*Id.*)

On September 4, 2009, Plaintiff submitted a grievance to his counselor at Stateville pertaining to his failure to receive a Kosher diet. (Defs.' 56.1(a)(3) Statement ¶ 14.) On September 9, 2009, Counselor Harris responded to that grievance. (*Id.*, ¶ 15.) On September 21, 2009, the

ARB received four grievances submitted by the Plaintiff. (*Id.* ¶ 16.) The grievances included the September 4, 2009, grievance pertaining to his failure to receive a Kosher diet and three additional grievances dated September 15, 2009. (*Id.*) The three grievances dated September 15, 2009, pertained to: (1) failure to receive food or water upon arriving at Stateville from Pontiac Correctional Center on August 25, 2009 and "poor treatment" upon arriving at Stateville, i.e., leaving him in a holding pen, unsupervised and handcuffed behind his back, placing him in a roach infested cell, peeling paint on the wall in the cell, placing him in a cell with a urine soaked and blood stained mattress; (2) placement into a cell with a mattress covered in mildew, urine and bodily fluids; and (3) failure to receive a Kosher diet. (*Id.*) All three grievances dated September 15, 2009, were submitted by Plaintiff directly to the ARB. (*Id.*)

On September 25, 2009, Brain Fairchild, the ARB Chairperson, received the four grievances submitted by Plaintiff. (Defs.' 56.1(a)(3) Statement ¶ 17.) Fairchild responded that additional information was required to appeal any decision because Plaintiff did not use the required Committee Person's Grievance Report, including the Grievance Officer's and CAO's responses. (*Id.*.) Specifically, Plaintiff did not follow the proper procedure before sending the grievances to the ARB. (*Id.*)

On October 28, 2009, the ARB received a grievance submitted by Plaintiff dated October 6, 2009. (Defs.' 56.1(a)(3) Statement ¶ 18.) The grievance pertained to: (1) Plaintiff's segregation placement and "holding past his lawful segregation out date," (2) a window that did not close in his cell, and (3) the lack of heat in his cell. (*Id.*) On November 1, 2009, Fairchild reviewed the October grievance and responded that the grievance was not submitted according to the grievance procedure because Plaintiff did not use the required Committee Person's Grievance Report,

6

including the Grievance Officer's and CAO's responses. (*Id..*) Again, Plaintiff did not follow the proper procedure before sending the grievances to the ARB. (*Id.*)

On March 2, 2010, the ARB received a grievance submitted by Plaintiff dated February 21, 2010. (Defs.' 56.1(a)(3) Statement ¶ 20.) This grievance pertained to: (1) harassment; (2) cell conditions, specifically a broken latch in his cell, a filthy roach infested cell, a blood stained and urine soaked mattress; (3) denial of due process of grievance procedure to exhaust state remedies; protective custody issues; (5) intentional delay of incoming and outgoing mail; (6) abuse of staff; and (7) civil rights violations. (*Id.*). On March 12, 2009, Fairchild responded to the latest grievance as he had the previous grievances that were not properly submitted because Plaintiff had not followed the proper grievance procedure. (*Id.*, 21.)

## ANALYSIS

Exhaustion of administrative remedies, pursuant to the Prison Litigation Reform Act, is required for all prisoner/detainee suits seeking redress for prison circumstances or occurrences, regardless of whether they involve general circumstances of incarceration or particular episodes. *See Porter v. Nussle*, 534 U.S. 516 (2002). Under 42 U.S.C. § 1997e(a), the court is directed to dismiss a suit brought with respect to prison conditions if the court determines that plaintiff has failed to exhaust his administrative remedies. *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532 (7th Cir. 1999).

A prisoner/detainee must take all the steps required by the institution's grievance system in order to exhaust his administrative remedies properly. *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004); *Pozo v. McCaughtry*, 286 F.3d 1022, 1023-24 (7th Cir. 2002). Moreover, exhaustion is a precondition to filing suit, so that a prisoner's attempt to exhaust available administrative remedies

7

in the midst of litigation is insufficient. *See Ford*, 362 F.3d at 398; *Perez*, 182 F.3d at 536-37.

To exhaust remedies under § 1997e(a) a prisoner "must file complaints and appeals in the place, and at the time, the *prison's* administrative rules require." *Pozo*, 286 F.3d at 1025; *see also Freeman v. Francis*, 196 F.3d 641, 644 (6th Cir. 1999) ("[T]he exhaustion requirement in § 1997e(a) is directed at exhausting the prisoner's administrative remedies in the corrections system, and investigation by another agency does not satisfy the requirement of the statute."). The purpose behind the exhaustion requirement is to give correctional officials the opportunity to address complaints internally before a federal suit is initiated. *See Porter*, 534 U.S. at 524-25.

Here, Plaintiff filed multiple grievances related to the allegations in his complaint. However, none of the grievances were submitted in compliance with the grievance procedure at Stateville. Plaintiff did not seek review of first grievance with the CAO and he did not submit the subsequent grievances to either his counselor or the CAO before submitting them to the ARB. Plaintiff argues that the Defendants and their administrative assistants prevented him from exhausting his administrative remedies. (Plaint.'s Response ¶ 3.) However, he fails to support the allegation. *See Goodman v. National Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010) (summary judgment is the "put up or shut up" time in litigation). He also concedes that he sent numerous grievances directly to the ARB. (Plaint.'s Response ¶ 4.) However, the grievance procedure does not allow for sending the grievances directly to the ARB.

It is clear from the summary judgment evidence that Plaintiff did not exhaust his administrative remedies in accordance with the procedures at Stateville. *See Pozo*, 286 F.3d at 1025. Plaintiff's inadequate use of the prison's grievance system deprived the prison of its ability

to address Plaintiff's concerns. *See Porter*, 534 U.S. at 524-25. Accordingly, under Section 1997(e), judgment must be rendered in favor of Defendants.

## CONCLUSION

For the foregoing reasons, Defendants' motion for leave to file a motion for summary judgment [57] and their motion for summary judgment [58] are granted. Plaintiff's motion/ objection to Defendants' motion for summary judgment [63] is construed as his objection to Defendants' motion; and the Clerk is directed to term it as a pending motion. Plaintiff's complaint is dismissed without prejudice pursuant to 42 U.S.C. § 1997e(2). The case is terminated.

Dated: 6-16-11

Charles R. Norgle
United States District Court Judge